**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>1:20-cv-2842</u>

FALLEN PRODUCTIONS, INC.,
HUNTER KILLER PRODUCTIONS, INC.,
RAMBO V PRODUCTIONS, INC.,
LHF PRODUCTIONS, INC.,
MILLENNIUM FUNDING, INC.,
HB PRODUCTIONS, INC.,
STOIC PRODUCTIONS, INC.,
VOLTAGE HOLDINGS, LLC,
GUNFIGHTER PRODUCTIONS, LLC,
SF FILMS, LLC,
DEFINITION DELAWARE, LLC, and
AFTER PRODUCTIONS, LLC,

      Plaintiffs,

v.

STEPHEN MOODY,
WILLIAM NELSON, and
TY TIDWELL.

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiffs Fallen Productions, Inc., Hunter Killer Productions, Inc., Rambo V Productions, Inc., LHF Productions, Inc., Millennium Funding, Inc., HB Productions, Inc., Stoic Productions, Inc.; Voltage Holdings, LLC, Gunfighter Productions, LLC, SF Film, LLC, Definition Delaware, LLC and After Productions, LLC ("Plaintiffs") file this Complaint against Defendants Stephen Moody, William Nelson, and Ty Tidwell ("Defendants") and allege as follows:

20-022B

## I.      NATURE OF THE ACTION

1.      This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.      The Plaintiffs allege that Defendants are liable for: (1) direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.      Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside or resided, and therefore can or could be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(b (venue for copyright cases), because the Defendants or Defendants' agents resides and can be found in this District.

## III.      PARTIES

2

20-022C

## A.   The Plaintiffs

6.     The Plaintiffs are owners of the copyrights for the motion pictures ("Works"), respectively, as shown in Exhibit "1".

7.     Plaintiffs Hunter Killer Productions, Inc., Fallen Productions, Inc., Rambo V Productions, Inc., LHF Productions, Inc., Millennium Funding, Inc., HB Productions, Inc., and Stoic Productions, Inc. are corporations organized under the laws of the State of Nevada, having principal offices in Los Angeles, California and are affiliates of Millennium Media, a production company and distributor of a notable catalog of major motion pictures.

8.     Voltage Holdings, LLC and After Productions, LLC are limited liability companies registered under the laws of the State of California and having principal offices in Los Angeles, California.

9.     Definition Delaware, LLC is a limited liability company registered under the laws of Delaware and a having principal office in Delaware.

10.     SF Film, LLC is a limited liability company registered under the laws of the State of New York and having a principal office in New York County of New York.

11.     Gunfighter Productions, LLC is a limited liability company registered under the laws of the State of Louisiana and having domicile address in Baton Rouge, Louisiana.

12.     Voltage Holdings, LLC; Gunfighter Productions, LLC; SF Film, LLC; Definition Delaware, LLC; and After Productions, LLC are affiliates of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures.

20-022C

**B.   The Defendants**

13.     Upon information and belief, Defendants are individuals residing in Colorado.

14.     Each Defendant registered for an account with a website known as YTS ("YTS website") using an email address from an Internet Protocol ("IP") address as shown in Exhibit "2".

15.     The YTS website is currently accessible at YTS.MX and was previously accessible at YTS.AM, YTS.AG and YTS.LT.

16.     The YTS website is known for distributing torrent files of copyright protected motion pictures.



20-022C



17.    In stipulated judgments resolving lawsuits filed in the District of Hawaii, the operators of the YTS website, Senthil Segaran and Techmodo Limited, conceded that one or more third parties uploaded torrent files of the motion pictures *Once Upon a Time in Venice*, *Mechanic: Resurrection*, *Hunter Killer*, *Extremely Wicked Shockingly Evil and Vile*, and *Hellboy* to the YTS website and that the YTS website provided links for distributing the torrent files. *See Venice PI, LLC et al. v. NGUYEN DINH MANH, et al.*, 1:19-cv-169-LEK-KJM, Doc. #77; *Wicked Nevada, LLC vs. Senthil Vijay Segaran*, 1:19-cv-413-SOM-KJM, Doc. #25; and *HB Productions, Inc. vs. Senthil Vijay Segaran*, 1:19-cv-389-ACK-KJM, Doc. #51.

18.    The Defendants are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number and a file name.

20-022C

19.    Defendants distributed at least a piece of a copy of the motion picture *Hunter Killer* to individuals (Does 1-9) at IP addresses in Colorado including but not limited to one or more of those shown below:

| NAME | IP Address | YTS website Registered email address |
|------|-----------|--------------------------------------|
| Doe 1 | 207.189.30.153 | graXXXXXX@hotmail.com |
| Doe 2 | 174.128.227.226 | jclaXXXXXX@gmail.com |
| Doe 3 | 75.166.163.237 | panXXXXXX@gmail.com |
| Doe 4 | 161.97.220.38 | sksXXXXXX@mac.com |
| Doe 5 | 67.217.10.184 | eriXXXXXX@hotmail.com |
| Doe 6 | 74.118.90.234 | djrXXXXXX@yahoo.com |
| Doe 7 | 174.128.243.122 | schXXXXXX2@gmail.com |
| Doe 8 | 174.128.236.98 | mikXXXXXX@graystarr.com |
| Doe 9 | 73.95.133.25 | rarXXXXXX@gmail.com |

20.    Each of the above Does 1-9 also registered for an account with the YTS website using an email address (partially redacted above), downloaded the *Hunter Killer* torrent file from the YTS website, and reproduced, shared and distributed copies of the motion picture *Hunter Killer* as well as many other copyright protected Works from the IP addresses in Colorado.

21.    Upon information and belief, Each of the Defendants received from Plaintiffs' agent at least a first notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

## **Defendant Stephen Moody**

22.    Defendant Stephen Moody is an adult individual residing, upon information and belief, in Aurora, Colorado.

23.    Defendant Stephen Moody entered the name "Stephen Moody" and the

20-022C

state    "Colorado"    when    initially    registering    for    his    email    address "stephenhifi@hotmail.com" on or about June 4, 1999.

24.    Defendant Stephen Moody registered for an account with the YTS website using his email address "stephenhifi@hotmail.com".

25.    Defendant Stephen Moody logged on to check his email at the email address multiple times from IP address 73.153.233.238.

26.    Defendant Stephen Moody used the YTS account to download a torrent file associated with the motion picture *Angel Has Fallen* on 11/25/2019 from IP address 73.153.233.238.  *See* pg. 6 of Exhibit "2".

27.    Defendant Stephen Moody downloaded, reproduced and shared copies of the motion picture *Angel Has Fallen* under file name "Angel Has Fallen (2019) [BluRay] [720p] [YTS.LT]" on 11/25/2019.  *See* Exhibit "3".

28.    Upon information and belief, Defendant Stephen Moody used the YTS account to download a torrent file for the motion picture *Hunter Killer.*

29.    Defendant Stephen Moody downloaded, reproduced and shared copies of the motion picture *Hunter Killer* under file name "Hunter Killer (2018) [BluRay] [1080p] [YTS.AM]" multiple times on January 29, 2019.  *See* Exhibit "3".

30.    Defendant Stephen Moody has ignored repeated communications from Plaintiffs' counsel requesting him to cease and desist his unlawful activity and pay a portion of Plaintiffs' damages.

## Defendant William Nelson

31.    Defendant William Nelson is an adult individual residing, upon information

7

and belief, in Denver, Colorado.

32.    Defendant William Nelson entered the name "William Nelson" and the state "Colorado" when initially registering for his email address "wlnelson6@hotmail.com" on September 26, 2000.

33.    Defendant William Nelson registered for an account with the YTS website using the email address "wlnelson6@hotmail.com".

34.    Upon information and belief, Defendant William Nelson chose the username "sorcerer" for his YTS website account, and often commented on movies on the YTS website using this username.



20-022C

35.     Defendant William Nelson logged on to check his email at the email address multiple times from IP addresses 89.187.178.220, 89.187.177.135, 64.33.78.157, and 5.62.59.59.

36.     Defendant William Nelson used the YTS account to download a torrent file associated with the motion picture *Hunter Killer* on 1/19/2019 from IP address 89.187.178.220.  *See* pg. 3 of Exhibit "2".

37.     Defendant William Nelson used the YTS account to download a torrent file associated with the motion picture *Extremely Wicked, Shockingly Evil and Vile* on 11/26/2019 from IP address 89.187.178.220.  *See* pg. 7 of Exhibit "2".

38.     Defendant William Nelson used the YTS account to download a torrent file associated with the motion picture *The Last Full Measure* (owned by non-Party Screen Media Ventures, LLC) on 1/21/2020 from IP address 89.187.178.158.  *See* pg. 9 of Exhibit "2".

39.     Upon information and belief, Defendant William Nelson used the YTS account to download torrent files associated with the motion pictures *Angel Has Fallen, The Professor And The Madman, After, Acts Of Vengeance, Blunt Force Trauma*, *Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy* and *Mechanic: Resurrection*.

40.     As shown in Exhibit "4", Defendant William Nelson, from IP addresses 89.187.178.158, 89.187.178.220, 89.187.177.135, 64.33.78.157, and 5.62.59.59 downloaded, reproduced and shared copies of the motion pictures *Angel Has Fallen, The Professor And The Madman, The Last Full Measure, Hunter Killer, After, Extremely*

*Wicked   Shockingly Evil And Vile*, *Acts Of Vengeance*, *Blunt Force Trauma*, *Skin*, *Disturbing the Peace*, *Once Upon a Time in Venice*, *Rambo V: Last Blood*, *London Has Fallen*, *Hellboy* and *Mechanic: Resurrection* under the following file names:

| Motion Picture | File Names |
|---|---|
| *Angel Has Fallen* | (1) "Angel Has Fallen (2019) [WEBRip] [720p] [YTS.LT]"; (2) "[ OxTorrent.com ] Angel.Has.Fallen.2019.MULTi.1080p.BluRay.x264.AC3-EXTREME.mkv" |
| *Hunter Killer* | "Hunter Killer (2018) [WEBRip] [1080p] [YTS.AM]" |
| *The Professor And The Madman* | "The Professor And The Madman (2019) [WEBRip] [720p] [YTS.AM]" |
| *After* | (1) "After (2019) [BluRay] [1080p] [YTS.LT]"; (2) "After.2019.1080p.WEBRip.x264-RARBG"; (3) "After (2019) [WEBRip] [1080p] [YTS.LT]"; (4) "After (2019) [BluRay] [720p] [YTS.LT]" |
| *Extremely Wicked Shockingly Evil And Vile* | (1) "Extremely Wicked Shockingly Evil And Vile (2019) [BluRay] [720p] [YTS.LT]"; (2) "Extremely Wicked  Shockingly Evil And Vile (2019) [BluRay] [1080p] [YTS.LT]" |
| *Acts Of Vengeance* | (1) "Acts Of Vengeance (2017) [WEBRip] [720p] [YTS.LT]"; (2) "Acts Of Vengeance (2017) [WEBRip] [720p] [YTS.LT]" |
| *Blunt Force Trauma* | "Blunt Force Trauma (2015) [BluRay] [720p] [YTS.LT]" |
| *Skin* | (1) "Skin (2018) [BluRay] [720p] [YTS.LT]"; (2) "Skin (2018) [BluRay] [1080p] [YTS.LT]". |
| *Disturbing the Peace* | (1) "Disturbing The Peace (2020) [1080p] [BluRay] [5.1] [YTS.MX]"; (2) "Disturbing The Peace (2020) [720p] [BluRay] [YTS.MX]" |
| *Once Upon a Time in Venice* | "Once Upon A Time In Venice (2017) [YTS.AG]" |

20-022C

| | |
|---|---|
| *Rambo V: Last Blood* | (1) "Rambo Last Blood (2019) [BluRay] [1080p] [YTS.LT]";<br><br>(2) "Rambo.Last.Blood.2019.720p.HC.HDRip.800MB.x264-GalaxyRG[TGx]";<br><br>(3) "Rambo.Last.Blood.2019.1080p.KORSUB.HDRip.x264.AAC2.0-STUTTERSHIT";<br><br>(4) "Rambo.Last.Blood.2019.1080p.BluRay.H264.AAC-RARBG" |
| *London Has Fallen* | "London Has Fallen (2016) [1080p] [YTS.AG]" |
| *Mechanic: Resurrection* | "Mechanic Resurrection (2016) [1080p] [YTS.AG]" |
| *Hellboy* | "Hellboy (2019) [BluRay] [1080p] [YTS.LT]" |
| *The Last Full Measure* | (1) "The Last Full Measure (2019) [WEBRip] [1080p] [YTS.LT]";<br>(2) "The Last Full Measure (2019) [WEBRip] [720p] [YTS.LT]" |

41.    Defendant William Nelson used a Virtual Private Network ("VPN") service associated with the ISP Datacamp limited (IP addresses 89.187.178.158, 89.187.178.220 and 89.187.177.135) to try to conceal his illicit activities.

42.    Defendant William Nelson has ignored repeated communications from Plaintiffs' counsel requesting him to cease and desist his unlawful activity and pay a portion of Plaintiffs' damages.

**<u>Defendant Ty Tidwell</u>**

43.    Upon information and belief, Defendant Ty Tidwell is a resident of Pueblo, Colorado.

44.    Defendant Ty Tidwell registered for an account with the YTS website using the email address "adx_broncosfan@msn.com".

45.    Defendant Ty Tidwell entered the name "Ty Tidwell" and the state

"Colorado" when initially registering for the email address "adx_broncosfan@msn.com" on March 3, 2005.

46.    Defendant Ty Tidwell logged on to check his email at the email address multiple times from IP address 71.62.71.209.

47.    Defendant Ty Tidwell used the YTS account to download a torrent file associated with the motion picture *Angel Has Fallen* on 11/26/2019 from IP address 71.62.71.209.  *See* pg. 5 of Exhibit "2".

48.    Upon information and belief, Defendant Ty Tidwell used the YTS account to download torrent files associated with the motion picture *Hunter Killer*.

49.    Defendant Ty Tidwell, from IP address 71.62.71.209, downloaded, reproduced and shared copies of the motion picture *Hunter Killer* under the file name "Hunter Killer (2018) [BluRay] [720p] [YTS.AM]" on 2/3/2019.  *See* Exhibit "5".

50.    Defendant Ty Tidwell has ignored repeated communications from Plaintiffs' counsel requesting him to cease and desist his unlawful activity and pay a portion of Plaintiffs' damages.

## IV.    JOINDER

51.    Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of the YTS website by Defendants for copying and distributing Plaintiffs' Works; and (b) that there are common questions of law and fact.

52.    Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly

12

joined because, as set forth in more detail below, the Plaintiffs Hunter Killer Productions, Inc. and Fallen Productions, Inc. assert that the infringement of their Works *Hunter Killer* and *Angel Has Fallen* complained of herein by each of the Defendants was accomplished by the Defendants using the same YTS website; and there are common questions of law and fact.  Moreover, the infringements of the Work *Hunter Killer* complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Work, and, upon information and belief, was accomplished by the Defendants acting in concert with each other.

## V.    FACTUAL BACKGROUND

### A.  The Plaintiffs Own the Copyrights to the Works

53.    The Plaintiffs are the owners of the copyright in the Works, respectively. The Works are the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "1".

54.    Defendants had notice of Plaintiffs' rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

55.    Defendants also had notice of Plaintiffs' rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

56.    The Works are motion pictures currently offered for sale in commerce.

57.    For example, a Blu-ray copy of the Work *Hunter Killer* was recently available for sale at the retail store Walmart in Aurora, Colorado for $17.19, a price which is reflective of the nationwide price at Walmart for the Work.

20-022C



58.     The YTS website provides torrent files, many including the name "YTS" in their file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiffs' Works.

59.     Defendants used the YTS website to download the torrent file "Hunter Killer (2018) [BluRay] [720p] [YTS.AM]" associated with Plaintiff Hunter Killer's Work.

60.     The Defendants knew the torrent file they downloaded would be used to illegally download and share copies of the Work.

61.     The YTS website displays, "WARNING! Download only with VPN…" and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service from a VPN on its homepage.  Upon information and belief, this warning has appeared on the YTS website since at least 2018.

20-022C

### B. Defendants Used BitTorrent To Infringe the Plaintiffs' Copyrights.

62.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

63.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendants installed a BitTorrent Client onto his or her Computer.

64.     A BitTorrent Client is a software program that implements the BitTorrent Protocol.   There are numerous such software programs which can be directly downloaded from the Internet.

65.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

66.     Each of Defendants installed a BitTorrent Client onto his computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

67.     A BitTorrent user that wants to upload the new file, known as an "initial

15

20-022C

seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

68.     The initial user or seeder of a file used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

69.     The initial seeder often modifies the file title of the Work to include a wording such as "RARBG" or "YTS" in the title of the torrent files and file copies in order to enhance a reputation for the quality of his or her torrent files and attract users to his or her piracy website.

70.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

71.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

72.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

73.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the

20-022C

data they receive.

74.    The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

75.    The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

76.    Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

77.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites including the YTS website.

78.    Defendants went to torrent sites including the YTS website to upload and download Plaintiffs' copyrighted Works.

### 4.  The Peer Identification

79.    The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

80.    Each Defendant was assigned a Peer ID by their BitTorrent client.

### 5.  Uploading and Downloading a Work Through a BitTorrent Swarm

81.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to

20-022C

which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

82.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

83.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

84.     In this way, all of the peers and seeders are working together in what is called a "swarm."

85.     Here, Defendants participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

86.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

87.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to

18

distribute the torrent file, here the copyrighted Work.

**6. The Plaintiffs' Computer Investigator Identified the Defendants' IP Addresses as Participants in Swarms That Were Distributing Plaintiffs' Copyrighted Works.**

88.     The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

89.     MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

90.     MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

91.     The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibits 3-5 accurately reflect what is contained in the evidence logs.

92.     The logged information in Exhibits 3-5 show that Defendants copied pieces of the Plaintiffs' copyrighted Works identified by the Unique Hash Numbers.

93.     The Defendants' computers used the identified IP addresses in Exhibits 3-5 to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

94.     MEU's agent analyzed each BitTorrent "piece" distributed by the IP

19

addresses listed on Exhibits 3-5 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Works.

95.    MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

**C. Defendants knew the Copyright Management Information included in the files they distributed to other peers had been removed or altered without the authority of Plaintiffs.**

96.    A legitimate file copy of the Works includes copyright management information ("CMI") indicating the title.

97.    The initial seeder of the infringing file copies of Plaintiffs' Works added wording to the file titles to "brand" the quality of piracy files he or she released and attract further traffic to his or her website.

98.    For example, the initial seeder of the infringing file copies of *Hunter Killer* added the wording "YTS" to the file titles to brand the quality of piracy files he or she released and attract further traffic to the YTS website.

99.    The word YTS is not included in the file title of legitimate copies or streams of the Plaintiffs' Works.  The initial seeders of the Works altered the title to falsely include the words "YTS" in the CMI.

100.   For example, the initial seeder of some the infringing file copies of *After* and *Rambo V: Last Blood* added the wording "RARBG" to the file titles to brand the quality of piracy files he or she released and attract further traffic to the RARBG piracy

20-022C

website.

101.    Similarly, the initial seeder of some the infringing file copies of *Rambo V: Last Blood* added the word "STUTTERSH*T" (partially redacted due to the profane nature of this word) to the file titles to brand the quality of piracy files he or she released and attract further traffic to the STUTTERSH*T piracy website.

102.    The file copies Defendants distributed to other peers in the Swarm included the altered CMI in the file title.

103.    Defendants knew that the website from which they obtained their torrent files was distributing illegal copies of the Works.

104.    Defendants knew that YTS was not the author of Plaintiffs' Works.

105.    Defendants knew that YTS was not a licensed distributor of Plaintiffs' Works.  Indeed, the YTS website includes a warning to this effect.

106.    Defendants knew that the CMI that included YTS in the file names was false.

107.    Defendant William Nelson knew that he CMI that included "EXTREME", "RARBG", "GalaxyRG[TGx]", and STUTTERSHIT in the infringing file names was false.

108.    Defendants knew that the file copies of the Works that they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiffs.

109.    Defendants knew that the CMI in the title they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiffs.

110.    Defendants knew that the false or altered CMI in the titles would induce, enable, facility or conceal infringements of the Works when they distributed the false

20-022C

CMI, altered CMI or Works including the false or altered CMI.

111.    Namely, Defendants knew that other recipients would see the file titles and use the altered CMI to go to the website such as YTS from where the torrent files originated to obtained unlicensed copies of the Works.

112.    By providing the website in the altered CMI to others, Defendants induced, enabled and facilitated further infringements of the Works.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

113.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

114.    Plaintiffs are the registered copyright owners of the Works which each contains an original work of authorship.

115.    Defendants copied the constituent elements of the copyright protected Works *Hunter Killer* and *Angel Has Fallen*.

116.    Defendants also publicly performed and displayed the copyright protected Works *Hunter Killer* and *Angel Has Fallen*.

117.    Defendant William Nelson copied the constituent elements of the Works *The Professor And The Madman, After, Extremely Wicked  Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy* and *Mechanic: Resurrection* as shown in Exhibit "4".

118.    Defendant William Nelson also publicly performed and displayed the Works

20-022C

*The Professor And The Madman, After, Extremely Wicked  Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy* and *Mechanic: Resurrection*.

119.   By participating in the BitTorrent swarms with others, Defendants distributed at least a piece of the copyright protected Works *Hunter Killer* and *Angel Has Fallen* to others.

120.   By participating in the BitTorrent swarms with others, Defendant William Nelson distributed at least a piece of each the copyright protected Works *The Professor And The Madman, After, Extremely Wicked  Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy* and *Mechanic: Resurrection* to others.

121.   Plaintiffs did not authorize, permit, or provide consent to Defendants to copy, reproduce, distribute, publicly perform, or display their Works.

122.   As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

123.   As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to distribute copies of the Works in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

124.   As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to perform the Works publicly, in violation of 17 U.S.C. §§ 106(4) and 501.

125.   Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

20-022C

126.    Each of the Plaintiffs have suffered damages that were proximately caused by each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VIII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)

127.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

128.    By participating in the BitTorrent swarms with others, Defendants induced, caused or materially contributed to the infringing conduct of the copyright protected Works *Hunter Killer* and *Angel Has Fallen* by others.

129.    By participating in the BitTorrent swarms with others, Defendant William Nelson induced, caused or materially contributed to the infringing conduct of the copyright protected Works *The Professor And The Madman, After, Extremely Wicked Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice, Rambo V: Last Blood, London Has Fallen, Hellboy* and *Mechanic: Resurrection* by others.

130.    Plaintiffs did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

131.    Defendants knew or should have known that the other BitTorrent users in a swarm with them were directly infringing the Plaintiffs' copyrighted Works by copying constituent elements of the registered Works that are original.   Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

24

20-022C

132.   The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

133.   By engaging in the contributory infringement alleged in this Complaint, the Defendants deprived not only the producers of the Works from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

## VIII. THIRD CLAIM FOR RELIEF

## (Digital Millennium Copyright Act Violations)

134.   Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

135.   Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Works *Hunter Killer* and *Angel Has Fallen* distributed copyright management information ("CMI") that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

136.   Defendants, without the authority of Plaintiffs Hunter Killer Productions, Inc. and Fallen Productions., or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include the wording "YTS" without the authority of Plaintiffs and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Works *Hunter Killer* and *Angel Has Fallen* in violation of 17 U.S.C. § 1202(b)(2).

20-022C

137.    Defendants, without the authority of Plaintiffs Hunter Killer Productions, Inc. and Fallen Productions., or the law, distributed Plaintiffs' Copyright protected Works *Hunter Killer* and *Angel Has Fallen* knowing that the CMI had been removed or altered to include the wording "YTS", and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of the copyright protected Works in violation of 17 U.S.C. § 1202(b)(3).

138.    Particularly, the Defendants knew that the CMI in the file names of the pieces had been altered to include the wording "YTS".

139.    Particularly, the Defendants distributed the file names that included CMI that had been altered to include the wording "YTS".

140.    Defendants knew that the wording "YTS" originated from the notorious movie piracy website for which each had registered accounts.

141.    Defendant William Nelson knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Works *The Professor And The Madman, After, Extremely Wicked  Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy* and *Mechanic: Resurrection* distributed CMI that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

142.    Defendants William Nelson, without the authority of the Copyright Owner Plaintiffs, or the law, distributed the Copyright Owner Plaintiffs' protected Works *The Professor And The Madman, After, Extremely Wicked  Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last*

20-022C

*Blood, London Has Fallen, Hellboy* and *Mechanic: Resurrection* knowing that the CMI had been removed or altered without the authority of Plaintiffs or the law and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Works in violation of 17 U.S.C. § 1202(b)(3).

143.   Particularly, the Defendant William Nelson knew that the CMI in the file names of the Works *The Professor And The Madman, After, Extremely Wicked Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy* and *Mechanic: Resurrection*  had been altered to include the wordings "YTS".

144.   Particularly, the Defendant William Nelson knew that the CMI in the three of file names of the infringing copy of the Work *Rambo V: Last Blood* has been altered to include the wordings, "RARBG", "STUTTERSH*T", and "GalaxyRG[TGx]".

145.   Particularly, the Defendant William Nelson knew that the CMI in the one of file names of the infringing copy of the Work *Angel Has Fallen* has been altered to include the wordings "OxTorrent.com".

146.   Particularly, Defendant William Nelson distributed the file names that included CMI that had been altered to include the wording "YTS", "RARBG", "STUTTERSH*T", "OxTorrent.com" and "GalaxyRG[TGx]".

147.   Defendants' acts constitute violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

148.   Plaintiff is entitled to an injunction to prevent Defendants from engaging in further violations of 17 U.S.C. § 1202.

27

20-022C

149.   Plaintiffs are entitled to recover from Defendants the actual damages suffered by Plaintiffs and any profits Defendants have obtained as a result of their wrongful acts that are not taken into account in computing the actual damages. Plaintiffs are currently unable to ascertain the full extent of the profits Defendants have realized by their violations of 17 U.S.C. § 1202.

150.   Plaintiffs are entitled to elect to recover from Defendants statutory damages for their violations of 17 U.S.C. § 1202.

151.   Plaintiffs are further entitled to costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) enter permanent injunctions enjoining Defendants from continuing to directly infringe and contribute to infringement of the Plaintiffs' copyrighted Works;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendants which they used to infringe Plaintiffs' Works immediately cease said service;

(C) award the Plaintiffs their actual damages from the copyright infringements and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for statutory damages per Work pursuant to 17 U.S.C. § 504(a) and (c);

(D) award the Plaintiffs their actual damages from the DMCA violations and Defendants' profits in such amount as may be found; or, in the alternative, at Plaintiffs' election, for statutory damages per DMCA violation pursuant to 17 U.S.C. § 1203(c) for violations of 17 U.S.C. § 1202;

20-022C

(E) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

The Plaintiffs hereby demands a trial by jury on all issues properly triable by jury.

/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:    (808) 464-4047
Facsimile:    (202) 204-5181
E-Mail:        kculpepper@culpepperip.com
Attorney for Plaintiffs: Fallen Productions, Inc.; Hunter Killer Productions, Inc.; Rambo V Productions, Inc.; LHF Productions Inc.; Millennium Funding, Inc.; HB Productions, Inc.; Stoic Productions, Inc.; Voltage Holdings, LLC; Gunfighter Productions, LLC; SF Film, LLC; Definition Delaware, LLC; and After Productions, LLC.

20-022C