**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>1:20-cv-2842-PAB-MEH</u>

FALLEN PRODUCTIONS, INC.,
HUNTER KILLER PRODUCTIONS, INC.,
RAMBO V PRODUCTIONS, INC.,
LHF PRODUCTIONS, INC.,
MILLENNIUM FUNDING, INC.,
HB PRODUCTIONS, INC.,
STOIC PRODUCTIONS, INC.,
VOLTAGE HOLDINGS, LLC,
GUNFIGHTER PRODUCTIONS, LLC,
SF FILMS, LLC,
DEFINITION DELAWARE, LLC,
AFTER PRODUCTIONS, LLC,
MORGAN CREEK PRODUCTIONS, INC., and
LAUNDRY FILMS, INC.,

       Plaintiffs,

v.

WILLIAM NELSON, and
RYAN FLATTERY,

       Defendants.

---

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiffs Fallen Productions, Inc., Hunter Killer Productions, Inc., Rambo V

Productions, Inc., LHF Productions, Inc., Millennium Funding, Inc., HB Productions, Inc.,

Stoic Productions, Inc.; Voltage Holdings, LLC, Gunfighter Productions, LLC, SF Film,

LLC, Definition Delaware, LLC, After Productions, LLC, Morgan Creek Productions, Inc.

and Laundry Films, Inc. ("Plaintiffs") file this Second Amended Complaint against

Defendants William Nelson and Ryan Flattery (previously identified as Doe 1) ("Defendants") and allege as follows:

## I.    NATURE OF THE ACTION

1.    This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.    The Plaintiffs allege that Defendants are liable for: (1) direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

## II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.    Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside or resided, and therefore can or could be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants'

agents resides and can be found in this District.

### III.   PARTIES

### A.   The Plaintiffs

6.     The Plaintiffs are owners of the copyrights for the motion pictures ("Works"), respectively, as shown in Exhibit "1".

7.     Plaintiffs Hunter Killer Productions, Inc., Fallen Productions, Inc., Rambo V Productions, Inc., LHF Productions, Inc., Millennium Funding, Inc., HB Productions, Inc., and Stoic Productions, Inc. are corporations organized under the laws of the State of Nevada, having principal offices in Los Angeles, California and are affiliates of Millennium Media, a production company and distributor of a notable catalog of major motion pictures.

8.     Plaintiffs Voltage Holdings, LLC and After Productions, LLC are limited liability companies registered under the laws of the State of California and having principal offices in Los Angeles, California.

9.     Plaintiff Definition Delaware, LLC is a limited liability company registered under the laws of Delaware and a having principal office in Delaware.

10.     Plaintiff SF Film, LLC is a limited liability company registered under the laws of the State of New York and having a principal office in New York County of New York.

11.     Plaintiff Gunfighter Productions, LLC is a limited liability company registered under the laws of the State of Louisiana and having domicile address in Baton Rouge, Louisiana.

3

20-022C

12.     Plaintiffs Voltage Holdings, LLC; Gunfighter Productions, LLC; SF Film, LLC; Definition Delaware, LLC; and After Productions, LLC are affiliates of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures.

13.     Plaintiff Morgan Creek Productions, Inc. is a corporation organized under the laws of the State of Delaware, having a principal office in Los Angeles, California.

14.     Plaintiff Laundry Films, Inc. is a corporation organized under the laws of the State of California, having a principal office in Los Angeles, California.

15.     Laundry Films, Inc.'s Work *The Brass Teapot*, which is the feature film debut of award-winning director Ramaa Mosely, tells the story of a couple that finds a magical brass teapot capable of providing money.  *The Brass Teapot* was nominated for the International Critics' Award (FIPRESCI) and Saturn Award.

16.     Ramaa Mosely also directed Laundry Films, Inc.'s Work *Lost Child* aka *Tatterdemalion*.  *Lost Child* tells the story of a female army veteran who finds an abandoned young boy in the woods.  Her search for clues of the boy's identity leads her to discover local folklore about a spirit that takes the form of a child.

## B.   The Defendants

17.     Upon information and belief, Defendants are individuals residing in Colorado.

18.     Each Defendant registered for an account with a website known as YTS ("YTS website") using an email address and accessed said account from an Internet Protocol ("IP") address as shown in Exhibit "2".

4

19.    The YTS website is currently accessible at YTS.MX and was previously accessible at YTS.AM, YTS.AG and YTS.LT.

20.    The YTS website is known for distributing torrent files of copyright protected motion pictures.



20-022C



21.     In stipulated judgments resolving lawsuits filed in the District of Hawaii, the operators of the YTS website, Senthil Segaran and Techmodo Limited, conceded that one or more third parties uploaded torrent files of the motion pictures *Once Upon a Time in Venice*, *Mechanic: Resurrection*, *Hunter Killer*, *Extremely Wicked Shockingly Evil and Vile*, and *Hellboy* to the YTS website and that the YTS website provided links for distributing the torrent files. *See Venice PI, LLC et al. v. NGUYEN DINH MANH, et al.*, 1:19-cv-169-LEK-KJM, Doc. #77; *Wicked Nevada, LLC vs. Senthil Vijay Segaran*, 1:19-cv-413-SOM-KJM, Doc. #25; and *HB Productions, Inc. vs. Senthil Vijay Segaran*, 1:19-cv-389-ACK-KJM, Doc. #51.

22.     The Defendants are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number and a file name.

20-022C

23.    Defendants distributed at least a piece of a copy of the motion picture *Hunter Killer* to individuals (Persons 1-8) at IP addresses in Colorado including but not limited to one or more of those shown below:

| NAME | IP Address | YTS website Registered email address |
|---|---|---|
| Person 1 | 207.189.30.153 | graXXXXXX@hotmail.com |
| Person 2 | 174.128.227.226 | jclaXXXXXX@gmail.com |
| Person 3 | 75.166.163.237 | panXXXXXX@gmail.com |
| Person 4 | 161.97.220.38 | sksXXXXXX@mac.com |
| Person 5 | 67.217.10.184 | eriXXXXXX@hotmail.com |
| Person 6 | 74.118.90.234 | djrXXXXXX@yahoo.com |
| Person 7 | 174.128.243.122 | schXXXXXX2@gmail.com |
| Person 8 | 174.128.236.98 | mikXXXXXX@graystarr.com |

24.    Each of the above Persons 1-8 also registered for an account with the YTS website using an email address (partially redacted above), downloaded the *Hunter Killer* torrent file from the YTS website, and reproduced, shared and distributed copies of the motion picture *Hunter Killer* as well as many other copyright protected Works from the IP addresses in Colorado.

25.    Upon information and belief, each of the Defendants received at least a first notice styled per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

## **Defendant William Nelson**

26.    Defendant William Nelson is an adult individual residing currently in Pierre, South Dakota and that previously resided in Colorado.

27.    Defendant William Nelson entered the name "William Nelson" and the state

20-022C

"Colorado" when initially registering for his email address "wlnelson6@hotmail.com" on September 26, 2000.

28.    Defendant William Nelson used an address in Westminster, Colorado when registering the website domain names tustatic.info and piratesdns.info with the domain registrar GoDaddy.com LLC.

29.    Defendant William Nelson held himself out as being owner of a company called Nelson International Inc. with an address in Westminster, Colorado when registering the website domain torrentuniverse.ws with the domain registrar GoDaddy.com LLC.

30.    Defendant William Nelson registered for an account with the YTS website using the email address "wlnelson6@hotmail.com".

31.    Defendant William Nelson logged on to check his email at the email address multiple times from IP addresses 89.187.178.220, 89.187.177.135, 64.33.78.157, and 5.62.59.59.

32.    Defendant William Nelson used the YTS account to download a torrent file associated with the motion picture *Hunter Killer* on 1/19/2019 from IP address 89.187.178.220.  *See* pg. 3 of Exhibit "2".

33.    Defendant William Nelson used the YTS account to download a torrent file associated with the motion picture *Extremely Wicked, Shockingly Evil and Vile* on 11/26/2019 from IP address 89.187.178.220.  *See* pg. 7 of Exhibit "2".

34.    Defendant William Nelson used the YTS account to download a torrent file associated with the motion picture *The Last Full Measure* (owned by non-Party Screen

8

Media Ventures, LLC) on 1/21/2020 from IP address 89.187.178.158.   *See* pg. 9 of Exhibit "2".

35.     Defendant William Nelson used the YTS account to download a torrent file associated with the motion picture *The Brass Teapot* on 7/24/2019 from IP address 64.33.78.157.   *See* pg. 10 of Exhibit "2".

36.     Defendant William Nelson downloaded, reproduced and shared copies of the motion pictures *The Brass Teapot* shortly thereafter under the file name "The Brass Teapot 2012 [BluRay] [720p] [YTS] [YIFY]"

37.     Upon information and belief, Defendant William Nelson used the YTS account to download torrent files associated with the motion pictures *Angel Has Fallen, The Professor And The Madman, After, Acts Of Vengeance, Blunt Force Trauma*, *Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy* and *Mechanic: Resurrection*.

38.     As shown in Exhibit "4", Defendant William Nelson, from IP addresses 89.187.178.158,   89.187.178.220,   89.187.177.135,   64.33.78.157,   and   5.62.59.59 downloaded, reproduced and shared copies of the motion pictures *Angel Has Fallen, The Professor And The Madman, The Last Full Measure, Hunter Killer, After, Extremely Wicked   Shockingly Evil And Vile, Acts Of Vengeance, Blunt Force Trauma*, *Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy, All Eyez on Me, The Brass Teapot* and *Mechanic: Resurrection* under the following file names:

20-022C

| Motion Picture | File Names |
|---|---|
| *Angel Has Fallen* | (1) "Angel Has Fallen (2019) [WEBRip] [720p] [YTS.LT]"; (2) "[ OxTorrent.com ] Angel.Has.Fallen.2019.MULTi.1080p.BluRay.x264.AC3-EXTREME.mkv" |
| *Hunter Killer* | "Hunter Killer (2018) [WEBRip] [1080p] [YTS.AM]" |
| *The Professor And The Madman* | "The Professor And The Madman (2019) [WEBRip] [720p] [YTS.AM]" |
| *After* | (1) "After (2019) [BluRay] [1080p] [YTS.LT]"; (2) "After.2019.1080p.WEBRip.x264-RARBG"; (3) "After (2019) [WEBRip] [1080p] [YTS.LT]"; (4) "After (2019) [BluRay] [720p] [YTS.LT]" |
| *Extremely Wicked Shockingly Evil And Vile* | (1) "Extremely Wicked Shockingly Evil And Vile (2019) [BluRay] [720p] [YTS.LT]"; (2) "Extremely Wicked  Shockingly Evil And Vile (2019) [BluRay] [1080p] [YTS.LT]" |
| *Acts Of Vengeance* | (1) "Acts Of Vengeance (2017) [WEBRip] [720p] [YTS.LT]"; (2) "Acts Of Vengeance (2017) [WEBRip] [720p] [YTS.LT]" |
| *Blunt Force Trauma* | "Blunt Force Trauma (2015) [BluRay] [720p] [YTS.LT]" |
| *Skin* | (1) "Skin (2018) [BluRay] [720p] [YTS.LT]"; (2) "Skin (2018) [BluRay] [1080p] [YTS.LT]". |
| *Disturbing the Peace* | (1) "Disturbing The Peace (2020) [1080p] [BluRay] [5.1] [YTS.MX]"; (2) "Disturbing The Peace (2020) [720p] [BluRay] [YTS.MX]" |
| *Once Upon a Time in Venice* | "Once Upon A Time In Venice (2017) [YTS.AG]" |
| *Rambo V: Last Blood* | (1) "Rambo Last Blood (2019) [BluRay] [1080p] [YTS.LT]"; (2) "Rambo.Last.Blood.2019.720p.HC.HDRip.800MB.x264-GalaxyRG[TGx]"; (3) |

10

20-022C

|  | "Rambo.Last.Blood.2019.1080p.KORSUB.HDRip.x264.AAC2.0-STUTTERSH*T";<br><br>(4) "Rambo.Last.Blood.2019.1080p.BluRay.H264.AAC-RARBG" |
|---|---|
| *London Has Fallen* | "London Has Fallen (2016) [1080p] [YTS.AG]" |
| *Mechanic: Resurrection* | "Mechanic Resurrection (2016) [1080p] [YTS.AG]" |
| *Hellboy* | "Hellboy (2019) [BluRay] [1080p] [YTS.LT]" |
| *All Eyez On Me* | All Eyez On Me (2017) [YTS.AG] |
| *The Brass Teapot* | "The Brass Teapot 2012 [BluRay] [720p] [YTS] [YIFY]" |
| *The Last Full Measure* | (1) "The Last Full Measure (2019) [WEBRip] [1080p] [YTS.LT]";<br>(2) "The Last Full Measure (2019) [WEBRip] [720p] [YTS.LT]" |

39.     Defendant William Nelson used a Virtual Private Network ("VPN") service associated with the Internet Service Provider ("ISP") Datacamp limited (IP addresses 89.187.178.158, 89.187.178.220 and 89.187.177.135) to try to conceal his illicit activities.

40.     Defendant William Nelson has ignored repeated communications from Plaintiffs' counsel requesting him to cease and desist his unlawful activity and pay a portion of Plaintiffs' damages.

**Defendant Ryan Flattery**

41.     Upon information and belief, Defendant Ryan Flattery, previously Defendant as DOE 1, is an individual residing in Denver, Colorado.

42.     Defendant Ryan Flattery registered for an account with the YTS website using the email address "raro15151@gmail.com".

20-022C

43.     Defendant Ryan Flattery used the YTS account to download a torrent file associated with the motion picture *Lost Child* on 5/22/2020 from IP address 73.95.133.25.  *See* pg. 12 of Exhibit "2".

44.     Upon information and  belief, Defendant Ryan Flattery thereafter used a BitTorrent Client application to download, reproduce and share copies of the motion picture *Lost Child*.

45.     Comcast, the Internet Service Provider for the IP address 73.95.133.25, indicated that the IP address was assigned to Ryan Flattery on at least 9/10/2020.

46.     Google, the email provider for the email address raro15151@gmail.com, indicated that the user of this email address has used multiple IP addresses associated with Comcast and in the Denver, Colorado area to login to this email account.   For example, Google indicates that Ryan Flattery created and agreed to the terms of service for the account from IP address 73.95.133.46 and used IP address 73.95.135.27 to login to the account multiple times on 1/3/2020

47.     Upon information and belief, Defendant Ryan Flattery used the YTS account to download torrent files associated with the motion pictures *Hunter Killer* and *Angel Has Fallen*.

48.     Defendant Ryan Flattery, from IP address 73.95.133.25, downloaded, reproduced and shared copies of the motion picture *Hunter Killer* under the file name "Hunter Killer (2018) [WEBRip] [720p] [YTS.AM]" on 3/28/2019 and "Hunter Killer (2018) [BluRay] [720p] [YTS.AM]" on 4/2/2019.  *See* Exhibit "6".

49.     Defendant Ryan Flattery, from IP address 73.95.133.25, downloaded,

20-022C

reproduced and shared copies of the motion picture *The Professor and the Madman* under the file name "The Professor And The Madman (2019) [BluRay] [1080p] [YTS.LT]" multiple times on 6/19/2019.  *See* Exhibit "6".

50.     Defendant Ryan Flattery, from IP address 73.95.133.25, downloaded, reproduced and shared copies of the motion picture *All Eyez on Me*  under the file name "All Eyez on Me (2017) - English - HDCAM - 800MB.mp4" multiple times on 9/10/2020. *See* Exhibit "6".

51.     Defendant Ryan Flattery, from IP address 73.95.135.27 – the same IP address he used to login to his gmail account on 1/3/2020, downloaded, reproduced and shared copies of the motion picture *All Eyez on Me*  under the file name "All Eyez on Me (2017) - English - HDCAM - 800MB.mp4" multiple times on 9/9/2020.  *See* Exhibit "6".

52.     Defendant Ryan Flattery has ignored multiple communications from Plaintiffs' counsel requesting him to cease and desist his unlawful activity and pay a portion of Plaintiffs' damages.

### IV.     JOINDER

53.     Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of the YTS website by Defendants for copying and distributing Plaintiffs' Works; and (b) that there are common questions of law and fact.

54.     Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiffs Hunter Killer Productions,

20-022C

Inc. and Fallen Productions, Inc. assert that the infringement of their Works *Hunter Killer* and *Angel Has Fallen* complained of herein by each of the Defendants was accomplished by the Defendants using the same YTS website; and there are common questions of law and fact.  Moreover, the infringements of the Work *Hunter Killer* complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Work, and, upon information and belief, was accomplished by the Defendants acting in concert with each other.

### V.    FACTUAL BACKGROUND

#### A.  The Plaintiffs Own the Copyrights to the Works

55.    The Plaintiffs are the owners of the copyright in the Works, respectively. The Works are the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "1".

56.    Defendants had notice of Plaintiffs' rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

57.    Defendants also had notice of Plaintiffs' rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

58.    The Works are motion pictures currently offered for sale in commerce.

59.    For example, a Blu-ray copy of the Work *Hunter Killer* was recently available for sale at the retail store Walmart in Aurora, Colorado for $17.19, a price which is reflective of the nationwide price at Walmart for the Work.

20-022C



60.     The YTS website provides torrent files, many including the name "YTS" in their file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiffs' Works.

61.     Defendants used the YTS website to download the torrent files "Hunter Killer (2018) [BluRay] [720p] [YTS.AM]" associated with Plaintiff Hunter Killer Productions, Inc.'s Work and "Angel Has Fallen (2019) [BluRay] [720p] [YTS.LT]" associated with Plaintiff Fallen Productions, Inc., Work.

62.     The Defendants knew the torrent files they downloaded would be used to illegally download and share copies of the Works.

63.     The YTS website displays, "WARNING! Download only with VPN…" and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service

20-022C

from a VPN on its homepage.  Upon information and belief, this warning has appeared on the YTS website since at least 2018.



64.    The term of use of the YTS website explicitly prohibit individuals in the United States of America from accessing or using the YTS website.  Upon information and belief, this restriction has been included in the terms of the YTS website since at least October of 2019. *See* Internet Archive, https://web.archive.org/web/20191001181723/https://yts.lt/terms [last accessed on September 25, 2020].

**B. Defendants Used BitTorrent To Infringe the Plaintiffs' Copyrights.**

65.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

66.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each

20-022C

other simultaneously (one computer connected to numerous computers).

### 1. Defendants installed a BitTorrent Client onto his or her Computer.

67.     A BitTorrent Client is a software program that implements the BitTorrent Protocol.   There are numerous such software programs which can be directly downloaded from the Internet.

68.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

69.     Each of Defendants installed a BitTorrent Client onto his computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

70.     A BitTorrent user that wants to upload the new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

71.     The initial user or seeder of a file used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

72.     The initial seeder often modifies the file title of the Work to include a wording such as "RARBG" or "YTS" in the title of the torrent files and file copies in order to enhance a reputation for the quality of his or her torrent files and attract users to his or her piracy website.

73.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

20-022C

74.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

75.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

76.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

77.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

78.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

79.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

18

80.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites including the YTS website.

81.     Defendants went to torrent sites including the YTS website to upload and download Plaintiffs' copyrighted Works.

### 4.  The Peer Identification

82.     The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

83.     Each Defendant was assigned a Peer ID by their BitTorrent client.

### 5.  Uploading and Downloading a Work Through a BitTorrent Swarm

84.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

85.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

86.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

87.     In this way, all of the peers and seeders are working together in what is called a "swarm."

88.     Here, Defendants participated in a swarm and directly interacted and

19

20-022C

communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

89.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

90.    Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

*6. The Plaintiffs' Computer Investigator Identified the Defendants' IP Addresses as Participants in Swarms That Were Distributing Plaintiffs' Copyrighted Works.*

91.    The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

92.    MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

93.    MEU extracted the resulting data emanating from the investigation,

20-022C

reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

94.    The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibits 3-6 accurately reflect what is contained in the evidence logs.

95.    The logged information in Exhibits 3-6 show that Defendants copied pieces of the Plaintiffs' copyrighted Works identified by the Unique Hash Numbers.

96.    The Defendants' computers used the identified IP addresses in Exhibits 3-6 to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

97.    MEU's agent analyzed each BitTorrent "piece" distributed by the IP addresses listed on Exhibits 3-6 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Works.

98.    MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

***C. Defendants knew the Copyright Management Information included in the files they distributed to other peers had been removed or altered without the authority of Plaintiffs.***

99.    A legitimate file copy of the Works includes copyright management information ("CMI") indicating the title.

21

100.    The initial seeder of the infringing file copies of Plaintiffs' Works added wording to the file titles to "brand" the quality of piracy files he or she released and attract further traffic to his or her website.

101.    For example, the initial seeder of the infringing file copies of *Hunter Killer* added the wording "YTS" to the file titles to brand the quality of piracy files he or she released and attract further traffic to the YTS website.

102.    The word YTS is not included in the file title of legitimate copies or streams of the Plaintiffs' Works.  The initial seeders of the Works altered the title to falsely include the words "YTS" in the CMI.

103.    For example, the initial seeder of some the infringing file copies of *After* and *Rambo V: Last Blood* added the wording "RARBG" to the file titles to brand the quality of piracy files he or she released and attract further traffic to the RARBG piracy website.

104.    Similarly, the initial seeder of some the infringing file copies of *Rambo V: Last Blood* added the word "STUTTERSH*T" (partially redacted due to the profane nature of this word) to the file titles to brand the quality of piracy files he or she released and attract further traffic to the STUTTERSH*T piracy website*.*

105.    The file copies Defendants distributed to other peers in the Swarm included the altered CMI in the file title.

106.    Defendants knew that the website from which they obtained their torrent files was distributing illegal copies of the Works.

107.    Defendants knew that YTS was not the author of Plaintiffs' Works.

22

108.    Defendants knew that YTS was not a licensed distributor of Plaintiffs' Works.  Indeed, the YTS website includes a warning to this effect.

109.    Defendants knew that the CMI that included YTS in the file names was false.

110.    Defendant William Nelson knew that he CMI that included "EXTREME", "RARBG", "GalaxyRG[TGx]", and STUTTERSH*T in the infringing file names was false.

111.    Defendants knew that the file copies of the Works that they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiffs.

112.    Defendants knew that the CMI in the title they distributed to other peers in the Swarm included the altered CMI without the authority of Plaintiffs.

113.    Defendants knew that the false or altered CMI in the titles would induce, enable, facility or conceal infringements of the Works when they distributed the false CMI, altered CMI or Works including the false or altered CMI.

114.    Namely, Defendants knew that other recipients would see the file titles and use the altered CMI to go to the website such as YTS from where the torrent files originated to obtained unlicensed copies of the Works.

115.    By providing the website in the altered CMI to others, Defendants induced, enabled and facilitated further infringements of the Works.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

116.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

23

20-022C

117.    Plaintiffs are the registered copyright owners of the Works which each contains an original work of authorship.

118.    Defendants copied the constituent elements of the copyright protected Works *Hunter Killer*, *Angel Has Fallen* and *The Professor And The Madman* .

119.    Defendants also publicly performed and displayed the copyright protected Works *Hunter Killer*, *Angel Has Fallen* and *The Professor And The Madman*.

120.    Defendant William Nelson further copied the constituent elements of the Works *After, Extremely Wicked Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice, Rambo V: Last Blood, London Has Fallen, Hellboy, The Brass Teapot* and *Mechanic: Resurrection* as shown in Exhibit "4".

121.    Defendant William Nelson also publicly performed and displayed the Works*, After, Extremely Wicked Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice, Rambo V: Last Blood, London Has Fallen, Hellboy, All Eyez on Me, The Brass Teapot* and *Mechanic: Resurrection*.

122.    Defendant Ryan Flattery further copied the constituent elements of the copyright protected Works *All Eyez on Me* and *Lost Child*.

123.    Defendant Ryan Flattery also publicly performed and displayed the copyright protected Works *All Eyez on Me* and *Lost Child*.

124.    By participating in the BitTorrent swarms with others, Defendants distributed at least a piece of each of the copyright protected Works *Hunter Killer*, *Angel Has Fallen* and *The Professor And The Madman* to others.

125.    By participating in the BitTorrent swarms with others, Defendant William

20-022C

Nelson further distributed at least a piece of each the copyright protected Works *After, Extremely Wicked Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy, The Brass Teapot* and *Mechanic: Resurrection* to others.

126.    By participating in the BitTorrent swarms with others, Defendant Ryan Flattery further distributed at least a piece of each of the copyright protected Works *All Eyez on Me* and *Lost Child* to others.

127.    Plaintiffs did not authorize, permit, or provide consent to Defendants to copy, reproduce, distribute, publicly perform, or display their Works.

128.    As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

129.    As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to distribute copies of the Works in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

130.    As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to perform the Works publicly, in violation of 17 U.S.C. §§ 106(4) and 501.

131.    Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

132.    Each of the Plaintiffs have suffered damages that were proximately caused by each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

**VIII. SECOND CLAIM FOR RELIEF**
**(Contributory Copyright Infringement based upon participation in the**

20-022C

**BitTorrent Swarm)**

133.   Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

134.   By participating in the BitTorrent swarms with others, Defendants induced, caused or materially contributed to the infringing conduct of the copyright protected Works *Hunter Killer*, *Angel Has Fallen* and *The Professor And The Madman* by others.

135.   By participating in the BitTorrent swarms with others, Defendant William Nelson further induced, caused or materially contributed to the infringing conduct of the copyright protected Works *After, Extremely Wicked  Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy, All Eyez on Me*, *The Brass Teapot* and *Mechanic: Resurrection* by others.

136.   By participating in the BitTorrent swarms with others, Defendant Ryan Flattery further induced, caused or materially contributed to the infringing conduct of the copyright protected Works *All Eyez on Me* and *Lost Child* by others.

137.   Plaintiffs did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

138.   Defendants knew or should have known that the other BitTorrent users in a swarm with them were directly infringing the Plaintiffs' copyrighted Works by copying constituent elements of the registered Works that are original.  Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

139.   The Defendants' infringements were committed "willfully" within the

meaning of 17 U.S.C. § 504(c)(2).

140.    By engaging in the contributory infringement alleged in this Second Amended Complaint, the Defendants deprived not only the producers of the Works from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

## VIII. THIRD CLAIM FOR RELIEF

### (Digital Millennium Copyright Act Violations)

141.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

142.    Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Works *Hunter Killer*, *Angel Has Fallen* and *The Professor And The Madman* distributed copyright management information ("CMI") that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

143.    Defendants, without the authority of Plaintiffs Hunter Killer Productions, Inc., Fallen Productions, Inc. and Voltage Holdings, LLC, or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include the wording "YTS" without the authority of these Plaintiffs and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright

protected Works *Hunter Killer*, *Angel Has Fallen* and *The Professor And The Madman* in violation of 17 U.S.C. § 1202(b)(2).

144.    Defendants, without the authority of Plaintiffs Hunter Killer Productions, Inc., Fallen Productions, Inc. and Voltage Holdings, LLC, or the law, distributed Plaintiffs' Copyright protected Works *Hunter Killer*, *Angel Has Fallen* and *The Professor And The Madman* knowing that the CMI had been removed or altered to include the wording "YTS", and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of the copyright protected Works in violation of 17 U.S.C. § 1202(b)(3).

145.    Particularly, the Defendants knew that the CMI in the file names of the pieces had been altered to include the wording "YTS".

146.    Particularly, the Defendants distributed the file names that included CMI that had been altered to include the wording "YTS".

147.    Defendants knew that the wording "YTS" originated from the notorious movie piracy website for which each had registered accounts.

148.    Defendant William Nelson knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Works *After, Extremely Wicked  Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy, The Brass Teapot, All Eyez on Me* and *Mechanic: Resurrection* distributed CMI that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

28

149.    Defendant William Nelson, without the authority of the Copyright Owner Plaintiffs, or the law, distributed the Copyright Owner Plaintiffs' protected Works *After, Extremely Wicked  Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy, All Eyez on Me*, *The Brass Teapot* and *Mechanic: Resurrection* knowing that the CMI had been removed or altered without the authority of Plaintiffs or the law and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Works in violation of 17 U.S.C. § 1202(b)(3).

150.    Particularly, Defendant William Nelson knew that the CMI in the file names of the Works *After, Extremely Wicked  Shockingly Evil And Vile, Acts Of Vengeance, Skin, Disturbing the Peace, Once Upon a Time in Venice*, *Rambo V: Last Blood, London Has Fallen, Hellboy, The Brass Teapot* and *Mechanic: Resurrection*  had been altered to include the wordings "YTS".

151.    Particularly, Defendant William Nelson knew that the CMI in the three of file names of the infringing copy of the Work *Rambo V: Last Blood* has been altered to include the wordings, "RARBG", "STUTTERSH*T", and "GalaxyRG[TGx]", respectively.

152.    Particularly, Defendant William Nelson knew that the CMI in the one of file names of the infringing copy of the Work *Angel Has Fallen* has been altered to include the wordings "OxTorrent.com".

153.    Particularly, Defendant William Nelson distributed the file names that included CMI that had been altered to include the wording "YTS", "RARBG", "STUTTERSH*T", "OxTorrent.com" and "GalaxyRG[TGx]".

29

154.    Defendant Ryan Flattery knowingly and with the intent to induce, enable, facilitate, or conceal infringement of the copyright protected Work *Lost Child* distributed CMI that falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2).

155.    Defendant Ryan Flattery, without the authority of Plaintiff Laundry Films, Inc., or the law, distributed removed or altered CMI knowing that the CMI had been removed or altered to include the wording "YTS" without the authority of the Plaintiff, and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Work *Lost Child* in violation of 17 U.S.C. § 1202(b)(2).

156.    Defendant Ryan Flattery, without the authority of the Copyright Owner Plaintiff, or the law, distributed the Copyright Owner Plaintiff's protected Work *Lost Child* knowing that the CMI had been removed or altered without the authority of the Plaintiff or the law and knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of copyright protected Work in violation of 17 U.S.C. § 1202(b)(3).

157.    Defendants' acts constitute violations under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

158.    Plaintiffs are entitled to an injunction to prevent Defendants from engaging in further violations of 17 U.S.C. § 1202.

159.    Plaintiffs are entitled to recover from Defendants the actual damages suffered by Plaintiffs and any profits Defendants have obtained as a result of their wrongful acts that are not taken into account in computing the actual damages. Plaintiffs

30

20-022C

are currently unable to ascertain the full extent of the profits Defendants have realized by their violations of 17 U.S.C. § 1202.

160.    Plaintiffs are entitled to elect to recover from Defendants statutory damages for their violations of 17 U.S.C. § 1202.

161.    Plaintiffs are further entitled to costs and reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) enter permanent injunctions enjoining Defendants from continuing to directly infringe and contribute to infringement of the Plaintiffs' copyrighted Works;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendants which they used to infringe Plaintiffs' Works immediately cease said service;

(C) award the Plaintiffs their actual damages from the copyright infringements and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for statutory damages per Work pursuant to 17 U.S.C. § 504(a) and (c);

(D) award the Plaintiffs their actual damages from the DMCA violations and Defendants' profits in such amount as may be found; or, in the alternative, at Plaintiffs' election, for statutory damages per DMCA violation pursuant to 17 U.S.C. § 1203(c) for violations of 17 U.S.C. § 1202;

(E) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiffs any and all other and further relief that this Court deems just

20-022C

and proper.

The Plaintiffs hereby demands a trial by jury on all issues properly triable by jury.


DATED: Kailua-Kona, Hawaii, December 3, 2020.


/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:    (808) 464-4047
Facsimile:    (202) 204-5181
E-Mail:        kculpepper@culpepperip.com
Attorney for Plaintiffs: Hunter Killer Productions, Inc.; Fallen Productions, Inc.; Rambo V
Productions, Inc.; LHF Productions Inc.; Millennium Funding, Inc.; HB Productions, Inc.;
Stoic Productions, Inc.; Voltage Holdings, LLC; Gunfighter Productions, LLC; SF Film,
LLC; Definition Delaware, LLC; After Productions, LLC; Morgan Creek Productions, Inc.
and Laundry Films, Inc.

20-022C